UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN ROBERT CENSALE, EAY085,<br><br>Plaintiff,<br><br>v.<br><br>ANDRE E. JACKSON, Sergeant,<br><br>Defendant. | Case No. 17-cv-01363-CRB  (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 34) |

On March 13, 2017, while plaintiff was detained at the San Mateo County Jail (SMCJ) awaiting a state criminal trial in which he was representing himself, plaintiff filed the instant pro se action for injunctive and monetary relief under 42 U.S.C. § 1983 alleging that the unsanitary condition of the holding cell he was assigned to use to make phone calls in connection with his defense creates a health hazard and imposes an undue hardship on his ability to represent himself.

On June 28, 2017, the court (Westmore, M.J.) screened the complaint pursuant to 28 U.S.C. § 1915A and found that, liberally construed, "the allegations in the complaint appear to give rise to constitutional claims based on unsanitary conditions of confinement and lack of access to the courts against Sgt. Jackson because he allegedly knew about the constitutional violations and took no steps to remedy the situation." June 28, 2017 Order (ECF No. 6) at 3. The court also ordered Sgt. Jackson served.

On August 28, 2017, after the action was reassigned to the undersigned, defendant Sgt. Jackson filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the ground that plaintiff failed to state a claim upon which relief can be granted because plaintiff did not suffer an actual injury in connection with the denial of court access claim or a punitive condition and deliberate indifference in connection with the unsanitary conditions of confinement claim.

On October 23, 2017, plaintiff filed a notice of change of address indicating that he had been convicted in San Mateo County Superior Court and transferred to San Quentin State Prison.

On November 9, 2017, the court denied defendant's motion to dismiss without prejudice to filing a motion for summary judgment "[b]ecause plaintiff's recent conviction and transfer to state prison likely will moot his claims for injunctive relief, and because defendant's arguments against plaintiff's denial of court access and unsanitary condition claims are best evaluated in the context of a motion for summary judgment in which the court can review evidence (including evidence already in the record)." Nov. 9, 2017 Order (ECF No. 32) at 2.[1]

Currently before the court for decision is defendant's motion for summary judgment on the ground that there are no material facts in dispute and that he is entitled to judgment as a matter of law on plaintiff's § 1983 claims of unsanitary conditions of confinement and denial of court access. Defendant also claims that he is entitled to qualified immunity. Plaintiff has filed an opposition and supplemental opposition, and defendant has filed a reply and supplemental reply.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed:

Plaintiff was detained at SMCJ from August 12, 2013 to October 16, 2017 awaiting trial on criminal charges in San Mateo County Superior Court. Jackson Decl. (ECF No. 34-1) ¶ 4. When plaintiff began representing himself in July 2015, he had access to a telephone in his housing unit during his thirty minutes of recreation time, an investigator, the jail's Legal Research Association, and email and internet through a handheld computer tablet. Pl.'s Ex. 3 (Writ of Habeas Corpus) (ECF No. 18 at 10) at 3; id. Ex. 5 (Am. to Habeas Corpus) (ECF No. 18 at 30) at 1, 2, 8. Plaintiff nonetheless sought and was granted an additional five hours of legal phone calls per week by the superior court. Id. Ex. 1 (Superior Court Order) (ECF No. 18 at 2) at 1.

Following the superior court's order, SMCJ staff formalized a call schedule for plaintiff and arranged for his legal phone calls to pre-approved numbers to be made from Holding Cell 7 (HC7). Pl.'s Decl. (ECF No. 2) at 1. Plaintiff's legal phone calls first were scheduled for 2:00 pm to 3:00 pm on Monday through Friday. Pl.'s Ex. 3 at 3. But later they were adjusted to 9:45 am to 11:15 am on Mondays and Wednesdays, and 7:45 pm to 9:15 pm on Thursdays and Sundays, to

---

[1] Plaintiff currently is incarcerated at the Santa Clara County Jail awaiting trial on criminal charges in Santa Clara County Superior Court.

2

allow plaintiff six hours of legal phone calls per week. Id.; id. Ex. 6 (Jackson Habeas Decl.) (ECF No. 18 at 46) ¶ 7. In May 2016, the superior court reviewed plaintiff's phone schedule and found that it permitted adequate phone access for plaintiff to prepare his case. Id. Ex. 6 ¶ 7.

Plaintiff alleges that "the situation got out of hand" shortly after he began making his phone calls from HC7. Pl.'s Decl. at 1. With the exception of two months when the cell was "fairly clean," plaintiff contends that "[t]he cell is absolutely dis[g]usting!" Id. at 3. He claims that the smell in "HC7 is usually so bad" – "urine, feces, vomit" – that "it is difficult to breath[e]." Id. at 1. He also claims the cell had "[p]eanut butter on the phone – spit on the walls and garbage piled up as if [he] was actually in a garbage dumpster." Id.

Plaintiff also alleges that his scheduled legal phone calls were often delayed "15, 20, 30 minutes" because of the unavailability of staff to transport him through the facility. Pl.'s Ex. 3 at 9. Out of 100 scheduled phone calls, plaintiff claims he was brought to HC7 on time "perhaps 5 or 6 times." Id. Ex. 5 at 4. And he claims that the condition of HC7 deterred him from using the phone on "at least two occasions" and that "a couple of times" he almost vomited as a result of the smell in the cell. Id. Ex. 2 (Proposed Order) (ECF No. 18 at 4) at 5; Id. Ex. 3 at 11.

Plaintiff filed administrative grievances regarding the condition of HC7 and filed a petition for a writ of habeas corpus in state court. Pl. Decl. at 2. The superior court denied the petition, but it prompted defendant to instruct SMCJ staff to address plaintiff's complaints about HC7. Compl. (ECF No. 1) at 3; Pl.'s Ex. 6 ¶ 6. Plaintiff concedes that HC7 was then "freshly painted" and was "usually fairly clean" for about two months, but it then "fell right back to how it was." Pl.'s Decl. at 3.

During his time at SMCJ, plaintiff made a total of 8,573 legal phone calls for a total of 422.76 hours from different phone locations at SMCJ. Jackson Decl. ¶ 3. Of those calls, plaintiff made 2,417 calls from HC7 for a total of 145.72 hours. Id.

/
/

## DISCUSSION

A. <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material

fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50.

B.  Analysis

Because plaintiff is no longer detained or incarcerated at SMCJ, his § 1983 claims for injunctive relief from unsanitary conditions of confinement and denial of court access at SMCJ are dismissed as moot. See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (if inmate is released from prison or transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, claims for injunctive relief should be dismissed as moot). The instant action will be limited to plaintiff's § 1983 claim for damages.

Defendant argues that he is entitled to summary judgment and qualified immunity from plaintiff's § 1983 claims for damages against him for unsanitary conditions of confinement and denial of court access at SMCJ. Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most

4

favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.[2]

1. Unsanitary Conditions of Confinement

In order to prevail on a § 1983 claim for damages for unsanitary conditions of confinement, a pretrial detainee must show that the challenged conditions "amount[ed] to punishment" in violation of the Due Process Clause. Bell v. Wolfish, 441 U.S. 520, 536 (1979). The pretrial detainee also must show that the named prison official acted with deliberate indifference. Castro v. County of Los Angeles, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc). Defendant claims he is entitled to summary judgment on plaintiff's unsanitary conditions of confinement claim because plaintiff has not shown that the conditions of which he complains amounted to punishment or that defendant was deliberately indifferent.

Punitive conditions may be shown where the challenged restrictions (1) are expressly intended to punish, or (2) serve an alternative, non-punitive purpose but are nonetheless "excessive in relation to the alternative purpose." Demery v. Arpaio, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting Bell, 441 U.S. at 538) (internal quotation marks omitted). Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security and effective management of a detention facility. See Bell, 441 U.S. at 540.

Plaintiff has not shown that the conditions/restrictions of which he complains amounted to punishment in violation of the Due Process Clause. First, it is undisputed that the express purpose of placing plaintiff in HC7 for one or one and a half hour intervals was not to punish him, but rather to provide him with a minimum of five hours per week of access to a pre-programmed

---

[2] Although the Saucier sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

5

phone for use in connection with his defense. Second, the undisputed facts in the record show that temporarily placing plaintiff in HC7 to make legal phone calls was reasonably related to legitimate governmental objectives of effective detention facility management and jail security maintenance – it (a) promoted the efficient operation of SMCJ by requiring that only one phone be pre-programmed with pre-approved numbers for plaintiff, (b) provided plaintiff with privacy to make his legal phone calls, (c) allowed SMCJ staff to address other needs while plaintiff made his calls, and (d) promoted jail security by allowing plaintiff to make his legal calls in a protected environment. And third, the undisputed facts in the record show that temporarily placing plaintiff in HC7 to make legal phone calls was not excessive in relation to its non-punitive purpose. That HC7 was often smelly and dirty does not compel a different conclusion.

In Anderson v. County of Kern, pretrial detainees and convicted prisoners at Kern County Jail brought claims under § 1983 alleging unsanitary conditions of confinement. 45 F.3d 1310, 1312-15 (9th Cir.), amended, 75 F.3d 448 (9th Cir. 1995). Mentally disturbed and suicidal inmates who had been placed in a safety cell "testified that the cell was dark, scary, and smelled bad, and that the pit toilet was encrusted with excrement and urine," and, at times, that they were chained to the grate above the pit toilet so that they would not hurt themselves. Id. at 1313. The Ninth Circuit acknowledged that severe or prolonged lack of sanitation can violate an inmate's constitutional rights, but it found the challenged conditions at the Kern County Jail constitutionally justified in view of the "severe safety concerns" posed by mentally disturbed and suicidal inmates, id. at 1314, and the fact that the inmates had not shown "that the sanitary limitations imposed upon them were more than temporary," id. at 1315.[3] Here, plaintiff similarly has not shown that the sanitary limitations he encountered in HC7 were more than temporary. Plaintiff spent no more than five or six hours a week in HC7. Having to spend five or six hours a week in a "usually" smelly or dirty holding cell is regrettable, but not punishment in violation of the Due Process Clause. Plaintiff's contention that the smelly and dirty conditions in HC7 were a health hazard does not compel a different conclusion because there is no evidence in the record that the conditions posed a substantial risk of harm to plaintiff. After all, there is no indication that plaintiff was exposed to a communicable disease in HC7 and it is undisputed that plaintiff voluntarily went to HC7 for a total of 145.72 hours (and made 2,417 phone calls from there) despite the holding cell's sanitary limitations.

---

[3]The Ninth Circuit added: "That a safety cell needs more frequent cleaning, or that its toilet needs more frequent flushing, does not establish that the cell must never be used at all." Anderson, 45 F.3d at 1315.

6

Plaintiff has not shown that defendant was deliberately indifferent in violation of the Due Process Clause either. In order to prevail on a § 1983 due process failure-to-protect claim against an individual defendant, a pretrial detainee must show that: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) the conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. Castro, 833 F.3d at 1071. In view of the lack of evidence in the record showing that the conditions in HC7 posed a substantial risk of harm to plaintiff, no reasonable jury could conclude that defendant was deliberately indifferent in violation of due process. See Anderson, 477 U.S. at 249.

Defendant is entitled to summary judgment on plaintiff's § 1983 claim of unsanitary conditions of confinement. See Fed. R. Civ. P. 56(a). He also is entitled to qualified immunity from damages because the right against severe or prolonged lack of sanitation cannot be held to be clear at a so high level of generality that, absent an obvious substantial risk of serious harm, it would be clear to a reasonable officer that temporarily placing an inmate in a holding cell that smells or is dirty violates the Constitution. In view of the Ninth Circuit's holding in Anderson v. County of Kern, a reasonable officer in defendant's position could have believed that having plaintiff use a holding cell that often was smelly and dirty five or six hours a week to make legal phone calls in connection with his defense was lawful under the circumstances. See Saucier, 533 U.S. at 201-02.

2. Denial of Court Access

Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, a prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. See Lewis, 518 U.S. at 350-55. A prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement to prove an actual injury. See id. at 354-55.

Here, where plaintiff was a pretrial detainee who had rejected counsel and chosen to represent himself, plaintiff must show that the inadequacy in the prison's program hindered his efforts to prepare a defense to prove an actual injury. Cf. Taylor v. List, 880 F.2d 1040, 1047 & n.4 (9th Cir. 1989) (noting that claim may be stated under § 1983 where right to self-representation recognized in Faretta v. California, 422 U.S. 806 (1975), is denied by lack of access

7

to books, witnesses or other tools necessary to prepare a defense). Plaintiff has not. Although he claims that having to use HC7 imposed a hardship on his ability to defend himself because the use of HC7 was time-consuming and the condition of HC7 deterred him from using it on at least two occasions, plaintiff has not shown that having to use HC7 to make legal phone calls hindered his efforts to defend himself and caused him an actual injury.

The undisputed facts in the record show that plaintiff defended himself against state criminal charges in San Mateo County Superior Court from July 2015 to October 2017, and ultimately negotiated a favorable plea deal. During this time, he was provided access to HC7 five to six hours per week to ensure that he had adequate phone access to mount his defense, and he made 2,417 calls (totaling 145.72 hours) from HC7. He also made additional calls during his recreation time. That the condition of HC7 deterred plaintiff from using it to make calls on a couple of occasions over a period of more than two years during which he made over 2,417 calls cannot be said to have hindered his efforts to make legal calls to prepare a defense and have caused him an actual injury.

Defendant is entitled to summary judgment on plaintiff's § 1983 claim of denial of court access. See Fed. R. Civ. P. 56(a). He also is entitled to qualified immunity from damages because a reasonable officer in defendant's position could have believed that having plaintiff use HC7 five to six hours per week to make legal calls to mount a defense was lawful under the circumstances. See Saucier, 533 U.S. at 201-02. After all, plaintiff made 2,417 calls from HC7.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (ECF No. 34) is GRANTED.

**IT IS SO ORDERED**.

Dated: August 6, 2018

_____
CHARLES R. BREYER
United States District Judge

8

1
2    UNITED STATES DISTRICT COURT
3    NORTHERN DISTRICT OF CALIFORNIA
4

| BRIAN ROBERT CENSALE,<br><br>Plaintiff,<br><br>v.<br><br>ANDRE E. JACKSON,<br><br>Defendant. | Case No. 3:17-cv-01363-CRB<br><br>**CERTIFICATE OF SERVICE** |
|---|---|

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 6, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Brian Robert Censale
San Clara County Jail
EAY085
701 S. Abel Street
Milpitas, CA 95035


Dated: August 6, 2018

Susan Y. Soong
Clerk, United States District Court

By:____*K. Scott*____
Lashanda Scott, Deputy Clerk to the
Honorable CHARLES R. BREYER